1  William M. Fischbach (SBN 019769)
2  **TB** TIFFANY & BOSCO
   P.A.
3  SEVENTH FLOOR CAMELBACK ESPLANADE II
   2525 EAST CAMELBACK ROAD
4  PHOENIX, ARIZONA 85016-4237
    (602) 255-6000
5  FACSIMILE:   (602) 255-0103
   EMAIL:  wmf@tblaw.com
6  *Attorneys for Plaintiffs*

7           **IN THE UNITED STATES DISTRICT COURT**

8              **FOR THE DISTRICT OF ARIZONA**

9
   Jon Hyde and Michelle Hyde,                    Case No.
10 Individually,
                    *Plaintiffs,*
11
   V.
12
   City Of Wilcox, Arizona,                       **COMPLAINT**
13 Cochise County,
   Raymond Robinson, Individually,
14 Brian Pralgo, Badge #6339
15 Individually, S. Bohlender,
   Badge #1757, Individually, S. Gijanto,
16 Individually, D. Noland, Individually,
17 Jordan Faulkner, Individually,
   M. Callahan-English, Individually,
18 J. Valle A.K.A. J. Villa (#152),
19 Individually, Mark Dannels
   Individually and as Cochise County
20 Sheriff, and Dale Hadfield,
   Individually and as the Director Of
21 Public Safety For The
22 City Of Wilcox,
                    §
23      *Defendants.*

24 TO THE HONORABLE UNITED STATES DISTRICT COURT:

25
         Now comes **JON HYDE** and **MICHELLE HYDE, INDIVIDUALLY AND AS**
26
27 **NEXT FRIENDS OF LUKE IAN HYDE** hereafter referred to as Plaintiffs, by and

28 through their undersigned attorney of record and, in accordance with the Civil Rights Act,

the Federal Rules of Civil Procedure, and the Arizona Revised Statutes, file this Original Complaint against the **CITY OF WILLCOX, COCHISE COUNTY, RAYMOND ROBINSON,** Individually, **BRIAN PRALGO**, Badge #6339, Individually, **S. BOHLENDER**, Badge #1757, Individually, **S. GIJANTO**, Individually, **D. NOLAND**, Individually, **JORDAN FAULKNER**, Individually, **M. CALLAHAN-ENGLISH**, Individually, **J. VALLE A.K.A. J. VILLA** (#152), Individually, **MARK DANNELS** Individually and as **COCHISE COUNTY SHERIFF**, and **DALE HADFIELD**, Individually and as the **DIRECTOR OF PUBLIC SAFETY FOR THE CITY OF WILLCOX**, (collectively, the "Defendants").In support of this cause of action, Plaintiffs would respectfully show unto the Court the following:

## I.
## PARTIES

1. Plaintiffs **JON HYDE AND MICHELLE HYDE** are individuals residing in Bexar County, Texas and are the father and mother of **LUKE IAN HYDE**, deceased (hereinafter referred to as "**LUKE**"). They sue in their individual capacities, as the next friends of Luke, and as statutory beneficiaries under A.R.S. § 12-612.

2. Defendant **CITY OF WILLCOX, ARIZONA** is a municipal governmental entity within the State of Arizona and the public employer of RAYMOND ROBINSON, BRIAN PRALGO, S. BOHLENDER, S. GIJANTO, D. NOLAND, JORDAN FAULKNER, M. CALLAHAN-ENGLISH, J. VALLE A.K.A. J. VILLA, and DALE HADFIELD, and therefore liable under principles of vicarious liability.

3. Defendant **COCHISE COUNTY** is a governmental entity within the State of Arizona and the public employer of MARK DANNELS as COCHISE COUNTY SHERIFF, and therefore liable under principles of vicarious liability.

4. Defendant **RAYMOND ROBINSON,** individually (hereinafter referred to as **"**DEFENDANT ROBINSON") at all times relevant, was a resident of the State of Arizona, and was an employee for the Cochise County Sheriff's Office.

5. Defendant **BRIAN PRALGO,** Badge #6339, Individually (hereinafter referred to as **"**DEFENDANT PRALGO") at all times relevant, was a resident of the State of Arizona, and was a "Detention Sergeant" for Cochise County.

6. Defendant **SAM BOHLENDER,** Badge #1757, individually (hereinafter referred to as **"**DEFENDANT BOHLENDER") at all times relevant, was a resident of the State of Arizona, and was a "Detention Officer" for Cochise County.

7. Defendant **SEAN GIJANTO,** individually (hereinafter referred to as **"**DEFENDANT GIJANTO" at all times relevant, was a resident of the State of Arizona, and was an Lieutenant Sergeant for Cochise County Sheriff's Office.

8. Defendant **D. NOLAND,** individually (hereinafter referred to as **"**DEFENDANT NOLAND" at all times relevant, was a resident of the State of Arizona, and was an employee for Cochise County.

9. Defendant **JORDAN FAULKNER,** individually (hereinafter referred to as **"**DEFENDANT FAULKNER" at all times relevant, was a resident of the State of Arizona, and was a Fire Medic for Cochise County.

10. Defendant **MARSHA CALLAHAN-ENGLISH,** individually (hereinafter referred to as **"**DEFENDANT CALLAHAN-ENGLISH" at all times relevant, was a resident of the State of Arizona, and was a Police Officer and employee of the City of Wilcox.

11. Defendant **J. VALLE, A.K.A. J. VILLA** (#152), individually (hereinafter referred to as **"**DEFENDANT VALLE") at all times relevant, was a resident of the State of Arizona, and was a Detective with Cochise County.

12. Defendant **MARK DANNELS,** Individually and as COCHISE COUNTY SHERIFF (hereinafter referred to as **"**DEFENDANT DANNELS") at all times relevant, was

a resident of the State of Arizona, and was an employee of Cochise County.

13. Defendant **DALE HADFIELD,** Individually and as the Director of Public Safety for the CITY OF WILLCOX (hereinafter referred to as **"DEFENDANT HADFIELD"**) at all times relevant, was a resident of the State of Arizona, and was an employee of the City of Wilcox.

## II.
## VENUE AND JURISDICTION

14. Plaintiffs assert their claims against Defendants for violation of LUKE's Fourth Amendment Rights against unreasonable search and seizure, which is incorporated upon the States through the Fourteenth Amendment. Moreover, Plaintiffs assert claims against Defendants for violation of LUKE's Eight Amendment Right against cruel and unusual punishment. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims that are set forth below.

15. Because Defendants' actions, inactions, and failures to comply with the Civil Rights Act all occurred or failed to occur in the County of Cochise, State of Arizona, venue in the Tucson Division of the Arizona District under 28 U.S.C. § 1391(b) is appropriate.

## III.
## STATEMENT OF FACTS

16. On or about, March 4, 2019, LUKE HYDE arrived at the Cochise County Sherriff's Office (CCSO) WILLCOX Detention Facility for booking at about 1:50 a.m. (Booking No. 19-0691; Inmate #291260). Roughly six and a half hours later, LUKE HYDE sat pulseless in a restraining chair—with his head cocked back, mouth agape, eyes rolled

back, and a puddle of his urine beneath him. After being pronounced brain dead and taken off life support at Tucson Medical Center, LUKE HYDE died in hospice on March 10, 2019.

17.     LUKE HYDE was 26 years old. He grew up in San Antonio, Texas with his parents and his younger twin brothers. During his senior year in high school, LUKE HYDE displayed emotional discord, which led to a diagnosis of bipolar disorder, schizophrenia, and attention deficit hyperactivity disorder (ADHD). To stabilize his condition LUKE HYDE was prescribed a rigorous course of six daily medications, which enabled him to obtain a job, and maintain a relationship with his family and his girlfriend. LUKE HYDE was otherwise healthy with no physical ailments, standing about 6'2" tall and 208 pounds. LUKE HYDE enjoyed road trips, saying that he felt most free when he was in the car.

18.     On the night of March 3, 2019, LUKE HYDE was heading home from a road trip, driving through the City of WILLCOX toward his parents' house in San Antonio, where he lived. Around midnight, WILLCOX Police Detective DEFENDANT J. VALLE, A.K.A. J. VILLA (Badge No. 152) pulled LUKE HYDE over and arrested him on suspicion of driving under the influence.

19.     The events leading to LUKE HYDE's tragic and untimely death are captured on the CCSO WILLCOX Detention Facility's video. LUKE HYDE arrived in booking at about 1:50 a.m. on March 4, 2019, and he voluntarily submitted to a blood draw. LUKE HYDE tested negative for alcohol. Though amphetamines were detected, this finding is consistent with LUKE HYDE's Adderall prescription for his ADHD.

20.     LUKE HYDE bided the next five and a half hours alone in a cell, engaging in routine activities like napping, eating, conversing with the officers on duty, and even requesting a phone to contact a lawyer. His wall-to-wall cement cell had a solid metal door with a built-in horizontal slot through which items could be passed, such as the phone LUKE HYDE was given to set up a phone account for himself.

21.     As of 7:30 a.m., with no medication having been dispensed to him, LUKE HYDE appeared restless. Minutes later, LUKE HYDE charged toward the door, aiming his right shoulder at the space below the metal slot. His shoulder made contact, causing him to lose his footing and cut his head on the lip of the metal slot as he fell to the floor.

22.     DEFENDANTS DEPUTY RAYMOND ROBINSON and DETENTION SERGEANT BRIAN PRALGO opened LUKE HYDE's cell door at 7:51 a.m. At that time, DEFENDANT JORDAN FAULKNER, fire medic, was in the booking area, preparing to examine LUKE HYDE's head wound. The booking area separates the male and female cell areas.

23.     LUKE HYDE emerged calmly from his cell, then sprinted through the booking area and into the female common area in a fight-or flight panic, with DEFENDANTS ROBINSON, PRALGO, and Detention Officer S. BOHLENDER unsuccessfully attempting to tackle him. LUKE HYDE reached a dead end in the female cell area, where he stood with his back against the wall, facing DEFENDANTS ROBINSON, PRALGO, and BOHLENDER.

24.     DEFENDANT PRALGO deployed his Taser at LUKE HYDE. Eight seconds

later, DEFENDANT ROBINSON deployed his Taser at LUKE HYDE. Fifteen seconds later, DEFENDANT ROBINSON deployed his Taser at LUKE HYDE yet again.

25. A scuffle ensued into the doorway of the booking area, where DEFENDANTS PRALGO, ROBINSON, and BOHLENDER heaped onto LUKE HYDE, attempting to handcuff LUKE HYDE's left hand to the door handle. In the meantime, DEFENDANTS Lieutenant S. GIJANTO and Sergeant D. NOLAND arrived and entered the fray at 7:54 and 7:55 a.m., respectively.

26. DEFENDANTS NOLAND and ROBINSON were at LUKE HYDE's legs as he lied on the ground, and three additional officers were at LUKE HYDE'S torso and head. DEFENDANT ROBINSON delivered eleven consecutive close-fisted peroneal strikes to LUKE HYDE's legs, as leg irons were fastened onto him. Meanwhile, DEFENDANT PRALGO activated his Taser on LUKE HYDE once more—two times on LUKE HYDE's thigh for approximately five seconds each.

27. At 8:02 a.m., LUKE HYDE was drug to his feet and he collapsed to his knees, as no less than six officers, including DEFENDANT VALLE and WILLCOX Police Officer DEFENDANT MARSHA CALLAHAN-ENGLISH, wrenched his body, ultimately handcuffing LUKE HYDE's hands behind his back. At 8:03 a.m., DEFENDANT PRALGO retrieved the restraint chair, and four officers hoisted LUKE HYDE's fatigued body into it, with his hands cuffed behind his back.

28. At 8:05 a.m. DEFENDANT PRALGO activated his Taser on LUKE HYDE's thigh one more time for approximately five seconds, while DEFENDANT CALLAHAN-

ENGLISH forced LUKE HYDE's head in a restraint hold, and four additional officers fastened LUKE HYDE into the restraint chair. LUKE HYDE was fully restrained as of 8:06 a.m., seated in the booking area.

29. During this 15-minute foray the officers deployed Tasers on LUKE HYDE at least six times, for no less than five seconds each. At all times, LUKE HYDE was fending himself against three to seven officers.

30. At 8:15 a.m. DEFENDANT PRALGO tightened LUKE HYDE's shoulder straps and fastened a lap belt on him.

31. At 8:24 a.m., LUKE HYDE rolled his head back against the headrest, gasping for air. Just then, four officers passed directly by LUKE HYDE, walking from the male cell area, through the booking area, and into the female cell area.

32. LUKE HYDE then sat alone, gasping for air, until he took a final breath at 8:27 a.m.

33. Callahan-English walked directly past LUKE HYDE's breathless body. Moments later at 8:28 a.m., DEFENDANTS PRALGO, VALLE, and FAULKNER found LUKE HYDE pulseless. DEFENDANT PRALGO pushed the restraint chair forward, revealing a puddle of LUKE HYDE's urine.

34. LUKE HYDE was removed from the restraint chair and put on the floor, still handcuffed, at 8:29 a.m. For the following ten minutes officers took turns administering chest compressions to LUKE HYDE and shocking him with an Automated External Defibrillator. Finally, at about 8:43 a.m., LUKE HYDE was transported to Northern

Cochise Community Hospital (NCCH) and his pulse was regained, though he remained unresponsive.

35.     Once NCCH determined that LUKE HYDE's medical condition required advanced care, LUKE HYDE was flown via helicopter to Tucson Medical Center (TMC), where he was put on life support. His diagnosis was anoxic brain injury, an injury that occurs when the brain is deprived of oxygen. TMC also noted a C6 vertebral fracture, rhabdomyolysis, lactic acidosis, and transaminitis.

36.     On March 9, 2019, at PLAINTIFFS JON HYDE and MICHELLE HYDE's instruction, LUKE HYDE was removed from life support. However, he did not immediately pass away. He was transported to hospice at 7:24 p.m. in respiratory distress. PLAINTIFFS JON HYDE and MICHELLE HYDE sat by LUKE HYDE's bedside in anguish as LUKE HYDE struggled. Wishing LUKE HYDE to be at peace, PLAINTIFFS requested aggressive palliative care.

37.     According to medical records, on the morning of March 10, 2019, LUKE HYDE's father was able to place his hand over LUKE HYDE's heart and tearfully tell LUKE HYDE that he will always be proud of him, that he loves him, and that he will be okay. LUKE HYDE was pronounced dead at 6:26 p.m. that night.

38.     According to the autopsy report, LUKE HYDE's causes of death included blunt force injuries, rhabdomyolysis, cardiomegaly, and coronary artery atherosclerosis.

39.     After LUKE HYDE was arrested, DEFENDANTS confiscated his prescription medication. As noted previously, LUKE had been diagnosed with several

mental health disorders and required a rigorous course of six daily medications. A cursory inspection of the medication would alert any trained officer or jailer that unless LUKE received these medications in a timely and prescribed fashion, his mental health would likely deteriorate. This is exactly what occurred in this situation. Upon arrival at the Cochise County Sherriff's Office (CCSO) WILLCOX Detention Facility and for hours afterwards, LUKE complied with all directions from Defendants in a courteous and calm manner. It was only after being deprived of his prescribed medication for six hours that LUKE's behavior turned erratic.

40. PLAINTIFFS timely served notices of claim under A.R.S. § 12-821.01. *See* **Exhibit A** and **Exhibit B**.

## IV.
## PLAINTIFFS' CIVIL RIGHTS CAUSE OF ACTION

41. The Civil Rights Acts provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983.

### (A) PLAINTIFFS' FIRST CLAIM: EXCESSIVE FORCE - PEACE OFFICER LIABILITY

42. Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

43. PLAINTIFFS hold claims against DEFENDANTS under 42 U.S.C. § 1983, and for punitive damages. The force used by the individual DEFENDANTS was excessive and therefore violates the Fourth Amendment of the United States Constitution which prohibits unreasonable searches and seizures. At all times relevant, the individual DEFENDANTS had actual awareness that LUKE had constitutional protection against unreasonable search and seizure. Despite having actual awareness of these protections, the individual DEFENDANTS violated LUKE's constitutional rights.

44. The individual DEFENDANTS' actions demonstrate the CCSO's and Wilcox Police Department's absolute failure to train the individual DEFENDANTS. The CCSO and Wilcox Police Department had a duty to ensure that officers were adequately trained in dealing with citizens with mental health issues. DEFENDANTS COCHISE COUNTY and THE CITY OF WILLCOX are liable under 42 U.S.C. § 1983 for failing to train their law enforcement officers.

45. Regardless of LUKE'S mental condition, the actions taken by the individual DEFENDANTS demonstrate a complete disregard for LUKE'S Fourth Amendment Rights.

46. LUKE'S death resulted from the use of force that was clearly excessive to the need, and the excessiveness was objectively unreasonable. In the span of 15-minutes, LUKE was tased at least six times, for no less than five seconds each, as he fended an onslaught of three to seven officers employing various strikes and holds against him. DEFENDANTS COCHISE COUNTY and the CITY OF WILLCOX are liable under 42 U.S.C. § 1983 for using excessive force against LUKE.

47. Furthermore, the DEFENDANTS are not entitled to qualified immunity

because they violated LUKE's clearly established constitutional rights.

48. PLAINTIFFS bring a claim against the individual DEFENDANTS, pursuant to 42 U.S.C. § 1983, and for punitive damages.

49. The force used by each individual DEFENDANT was excessive, and therefore violates the Fourth Amendment of the United States Constitution which prohibits unreasonable searches and seizures.

50. At all times relevant, each individual DEFENDANT had actual awareness that LUKE had constitutional protection against unreasonable search and seizure. Despite having actual awareness of these protections, DEFENDANTS violated the constitutional rights of LUKE.

**(B) PLAINTIFFS' SECOND CLAIM:
INADEQUATE TRAINING– COCHISE COUNTY AND CITY OF WILLCOX**

51. Cochise County Sheriff, Mark Dannels, and Dale Hadfield, the Director of Public Safety for the City of WILLCOX are liable under 42 U.S.C. § 1983 for failing to train their law enforcement officers.

52. The actions of the Cochise County Sheriff, Mark Dannels, and Dale Hadfield, the Director of Public Safety for the City of WILLCOX clearly demonstrated a complete and total failure to train RAYMOND ROBINSON, BRIAN PRALGO, S. BOHLENDER, S. GIJANTO, D. NOLAND, JORDAN FAULKNER, M. CALLAHAN-ENGLISH, J. VALLE A.K.A. J. VILLA, and DALE HADFIELD. Defendants' were aware that Luke had been prescribed numerous medications which regulated his mental health. However, due to a complete lack of training in dealing with individuals with mental health issues, Defendants' failed to properly respond to a young man in crisis. Defendants

failed to recognize or even acknowledge Luke's agitated state, deteriorating mental condition, or need for his prescription medications.

53.     Cochise County Sheriff, Mark Dannels, and Dale Hadfield, the Director of Public Safety for the City of WILLCOX actions demonstrate an absolute failure to train RAYMOND ROBINSON, BRIAN PRALGO, S. BOHLENDER, S. GIJANTO, D. NOLAND, JORDAN FAULKNER, M. CALLAHAN-ENGLISH, J. VALLE A.K.A. J. VILLA, and DALE HADFIELD. Cochise County Sheriff, Mark Dannels, and Dale Hadfield, the Director of Public Safety for the City of WILLCOX had a duty to ensure that officers were adequately trained in dealing with citizens with mental health issues. Cochise County and the City of WILLCOX are liable under 42 U.S.C. § 1983 for failing to train their law enforcement officers, RAYMOND ROBINSON, BRIAN PRALGO, S. BOHLENDER, S. GIJANTO, D. NOLAND, JORDAN FAULKNER, M. CALLAHAN-ENGLISH, J. VALLE A.K.A. J. VILLA, and DALE HADFIELD.

## V.
### SUPERVISORY LIABILITY - COCHISE COUNTY SHERIFF, MARK DANNELS AND DALE HADFIELD, DIRECTOR OF PUBLIC SAFETY FOR THE CITY OF WILLCOX

54.     DEFENDANTS COCHISE COUNTY, MARK DANNELS, AND DALE HADFIELD, THE DIRECTOR OF PUBLIC SAFETY FOR THE CITY OF WILLCOX had the duty to ensure officers like the individual DEFENDANTS received proper crisis intervention training (CIT). CIT training gives officers a basic understanding of mental health issues, appropriate de-escalation techniques, and proper communication tactics. CIT training is completely different from typical police training. For instance, situations involving mentally ill persons require a greater degree of patience and can require use of

CIT tactics for extended periods of time. Properly trained CIT officers are trained not to let the pressure of time to be a factor in their decision making. The individual DEFENDANTS' treatment of LUKE rapidly escalated matters, leading to his death. The clearly deficient training of officers with regard to citizens who suffer from mental illness rises to the level of deliberate indifference to constitutional rights of individuals such as LUKE.

55. Furthermore, after LUKE HYDE was arrested, DEFENDANTS confiscated his prescription medication. As noted previously, LUKE had been diagnosed with several mental health disorders and required a rigorous course of six daily medications. A cursory inspection of the medication would alert any trained officer or jailer that unless LUKE received these medications in a timely and prescribed fashion, his mental health would likely deteriorate. DEFENDANTS' failure to provide necessary medication demonstrates DEFENDANTS' failure to properly train the Individual Defendants.

56. The actions and omissions of DEFENDANTS deprived LUKE of his civil rights under the United States Constitution. In connection with these claims, PLAINTIFFS will be entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976. *See* 49 U.S.C. § 1988.

## VI.
## SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION

57. In addition to violating the rights guaranteed to LUKE by the Fourth and Eighth Amendment to the United States Constitution, DEFENDANTS, acting under color of law, violated the rights guaranteed to LUKE by the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. Moreover,

DEFENDANTS deprived LUKE of his right to substantive due process.

## VII.
## VIOLATION OF ARIZONA WRONGFUL DEATH STATUTE - A.R.S. § 12-611, *et seq*

58. As LUKE's surviving parents, the PLAINTIFF JON AND MICHELLE HYDE are statutory beneficiaries of claims under A.R.S. § 12-611 *et seq*. for Luke's wrongful death. Here, DEFENDANTS committed three torts that are actionable under the wrongful death statute. First, DEFENDANTS' reckless batteries of LUKE caused, or were a significant contributing factor, to LUKE's death. Second, DEFENDANTS were grossly negligent in their supervision and provision of medical care to LUKE while in their custody.

59. Here, DEFENDANTS were aware that LUKE required medication. At the time of the altercation, LUKE's medication was well overdue and its effects were wearing off, causing him to destabilize. DEFENDANTS then left LUKE restrained and insufficiently monitored after beating him severely, which again, caused, or was a significant contributing factor, to LUKE's death.

60. Finally, DEFENDANTS COCHISE COUNTY and the CITY OF WILLCOX committed the tort of negligent training and supervision. Negligent training/supervision is an independent form of liability that attaches to the employer based on an employee committing a tort.

61. DEFENDANTS COCHISE COUNTY and the CITY OF WILLCOX have independent liability under a theory of negligent training and supervision because it failed to properly train and/or supervise the employee DEFENDANTS in proper use of force, restraint, and medical care of prisoners.

62. In connection with these claims, PLAINTIFFS JON AND MICHELLE HYDE will seek compensatory damages for, *inter alia*, the loss of love affection, and companionship of Luke; the pain and suffering already experienced and to be experienced in the future; and the income and services that have been and will be lost as a result of LUKE's death.

## VIII. DAMAGES

63. PLAINTIFFS seek damages in the amount of ten million dollars ($10,000,000.00) for the violation of LUKE IAN HYDE's Fourth Amendment constitutional right to be free from unreasonable search and seizure and Eight Amendment right to be free from cruel and unusual punishment.

## IX. ATTORNEY'S FEES

64. Plaintiffs are entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976. *See* 49 U.S.C. § 1988. Plaintiffs hereby request that the Court and jury award them attorney's fees and expenses.

## X. JURY DEMAND

65. Plaintiffs respectfully demand a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby respectfully request that Defendants, CITY OF WILLCOX, COCHISE COUNTY, RAYMOND ROBINSON, Individually, BRIAN PRALGO, Badge #6339, Individually, S. BOHLENDER, Badge #1757, Individually, S. GIJANTO, Individually, D. NOLAND, Individually, JORDAN

FAULKNER, Individually, M. CALLAHAN-ENGLISH, Individually, J. VALLE A.K.A. J. VILLA (#152), Individually, MARK DANNELS Individually and as COCHISE COUNTY SHERIFF, and DALE HADFIELD, Individually and as the DIRECTOR OF PUBLIC SAFETY FOR THE CITY OF WILLCOX, be found liable, jointly and severally, for actual damages above the jurisdictional minimum of the Court, exemplary damages, pre-judgment interest, post-judgment interest, costs of Court, attorney fees and expenses and all other relief to which Plaintiff is justly entitled, at law or in equity.

RESPECTFULLY SUBMITTED this 10th day of March, 2020.

**TIFFANY & BOSCO**
P.A.

By: */s/William M. Fischbach*
William M. Fischbach
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
***Attorneys for Plaintiffs***